[No. 7286. Decided July 11, 1908.]

THEODORE ILES, *as Administrator of the Estate of Otis A. Kern, Deceased, Respondent*, v. MUTUAL RESERVE LIFE INSURANCE COMPANY, *Appellant*.[1]

INSURANCE—CONDITIONS—FORFEITURE — NONPAYMENT OF PREMIUM —WAIVER. A life insurance policy is rendered null and void, *ipso facto*, by failure to pay at maturity a note given in payment of the first year's premium, where the receipt therefor and the policy contained that express condition; and the company is not estopped to assert the forfeiture of the policy by the fact that it placed the note in the hands of an attorney for collection and endeavored without success to collect the note after its maturity and before the death of the assured, where the policy provided that no waiver of forfeiture should be valid unless in writing and signed by an officer of the company.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered November 1, 1907, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action upon a policy of life insurance. Reversed.

*Parsons & Parsons*, for appellant.

*Hathaway & Alston*, for respondent.

HADLEY, C. J.—This is an action to recover upon a life insurance policy. The suit was brought by the administrator of the estate of the assured. The policy was for $1,000, and

[1]Reported in 96 Pac. 522.

the first year's premium was not paid in cash, but the assured gave his promissory note for $23.41, due three months from its date. The note was not paid at maturity and has never been paid. The assured died eight months after the date of the policy and five months after the maturity of the note. At the time the note was taken and the policy delivered, the defendant gave to the insured a receipt in writing, which the latter accepted, and it contained the following condition:

"If a note is given in payment of any part of the premium receipt of which is hereinabove acknowledged, and if said note be not paid at its maturity, it is understood and agreed that the policy shall then be *ipso facto* null and void."

The policy itself also contained an equivalent provision with respect to the effect of nonpayment of any premium installment when due. After the maturity of the note, and after the defendant had knowledge of the default in payment, it placed the note in the hands of an attorney for collection, and efforts were made in behalf of the defendant to collect from the assured the amount of the note, but he still failed to pay. The cause was tried before the court without a jury, and the court concluded from the facts that the defendant, by its action in endeavoring to collect the amount of the note after its maturity, waived its right to declare a forfeiture of the policy, and that it is now estopped to deny that the policy was in full force when the insured died. Judgment was awarded to the plaintiff, and the defendant has appealed.

Assuming that the policy was in full force during the three months' credit period extended by reason of the note, it is, however, true that the assured did not die during that period. He died five months after the credit period had expired. Under the terms of the contract, the policy undoubtedly became null and void upon default in payment of the note at maturity. That proposition seems to be so elementary that discussion of it appears unnecessary. The policy having become void by reason of the negligent act of the insured to

pay the note, was it afterwards revived by the act of ·the appellant in merely seeking to effect payment? Was that conduct of appellant's sufficient of itself to waive the forfeiture that had already been effected in law? The policy contained the following provision:

"No contract, alteration or discharge of contract, waiver of forfeiture, or granting of permits or credits, shall be valid unless the same shall be in writing, signed by the president or vice president and one other officer of the company."

Under the above provision, it is plain that the forfeiture could not ordinarily be waived except in the manner stated. To be sure, if the money had been actually paid after forfeiture and its benefits had been accepted and retained by the appellant, a different question would have arisen. But nothing was done except to ask the insured to pay, which amounted to a mere offer to revive the policy if he should pay. To say that the mere offer to revive the policy, on condition of payment being made, operated to waive the forfeiture provision in the policy, notwithstanding the fact that payment was not made and the assured did nothing and assumed no liability which changed his situation, would, we think, do violence to elementary principles of fairness between men. Waiver as applied to the facts of this case is identical with estoppel.

In *Hughes v. New York Life Ins. Co.*, 32 Wash. 1, 72 Pac. 452, we said of estoppel as follows:

"The doctrine of estoppel is of equitable origin, and is founded upon principles of equity and justice. It is applied to conclude a party who, by his acts or admissions, has influenced the conduct of another only when in good conscience and honest dealing he ought not to be permitted to gainsay them."

Again, in *Elhart v. Pacific Mutual Life Ins. Co.*, 47 Wash. 659, 92 Pac. 419, this court, speaking of waiver, said:

"Ordinarily a ·waiver is an intentional release of some right, and it is generally held that provisions of this char-

acter in insurance policies are deemed to be waived only when an intention to waive is apparent, or where the conduct of the company is inconsistent with an intention to declare a forfeiture, or has placed the other party at a disadvantage, or gained for itself an advantage which it should not in justice and good conscience be permitted to assert."

In what way did the acts of appellant here influence the conduct of the deceased so as to mislead him or put him at a disadvantage? The argument is made that the demand for payment lulled him into the belief that the forfeiture was waived and that the policy was thereby reinstated and in force. To say that appellant should be estopped for such a consideration would, in our view, be to base the estoppel upon an element not sounding in good morals, whereas estoppel is always founded upon principles of equity and good conscience. If the insured contented himself with the belief that the mere demand for payment after maturity without any action upon his part revived his policy which had been forfeited by his own neglect, then he must have also rested secure in the belief that, no matter for how long a time he continued to refuse payment, his insurance would nevertheless be indefinitely prolonged. He had neither legal nor moral right to allow himself to be lulled into any such belief, and inasmuch as he in no way acted upon the demand for payment, his position was in law in no way changed thereby.

Respondent insists that the decision of this court in *Morgan v. Northwestern Nat. Life Ins. Co.*, 42 Wash. 10, 84 Pac. 412, is decisive of this case in his favor. We find that the facts of the two cases are very dissimilar. In the case cited the policy provided for monthly payments in advance. For a number of months the company accepted, without objection, payments at any time during the month. In some instances payments were not made until the last day of the month. These repeated acts established such a custom and course of dealing as admitted of no other construction than that it was the intention to waive the terms of the contract re-

quiring advance payments. The insured relied thereon and continued to make payments which were accepted, greatly to her prejudice if the company should have afterwards been permitted to say that the provision as to payments in advance had not been waived. We have seen that the insured in the case at bar was in no way put to a disadvantage by any act of appellant's, and the former case is therefore not an authority for holding that there was a waiver here.

Respondent also cites *Stewart v. Union Mut. Life Ins. Co.*, 155 N. Y. 257, 49 N. E. 876, 42 L. R. A. 147. The defense there was that the contract never became effective for the reason that the agent had no authority to grant credit for premiums. A note was taken for premium and, after its maturity, the insured gave his check on the bank to the agent. But the check was returned "not good." Correspondence ensued between the agent and assured with reference to providing for the cashing of the check, the letter suggesting that the assured attend to the matter "next week." The next day after this letter was written the assured died. The court held that the contract as made by the agent was ratified by the company, the credit being permitted, and that what occurred about the check amounted to an extension of the credit period. The insured died during that extension period, and the company was held. The court held that the credit period was extended by reason of the fact that the assured was definitely given until the next week to pay, and was not notified of any intention to insist upon a forfeiture. He was thus led to act upon a definite extension of credit, much to his disadvantage if the company could afterwards insist upon a forfeiture. The element of estoppel therefore clearly existed in the case. There was no definite or any extension of credit in the case at bar, but a mere offer in legal effect to reinstate a forfeited policy if payment should be made.

The case of *Hollis v. State Ins. Co.*, 65 Iowa 454, 21 N. W. 774, is also cited by respondent. That case involved a

fire insurance policy, and after the acts of the assured had had the effect to render the policy void, the company knowingly continued to treat the contract as of binding force, and thereby induced the insured to incur expense in that belief. The assured was placed at a disadvantage and his situation was changed, resulting directly from the act of the insurer; thus clearly introducing the element of estoppel.

Respondent cites three Kentucky cases, as follows: *Moreland v. Union Cent. Life Ins. Co.*, 104 Ky. 129, 46 S. W. 516; *Union Cent. Life Ins. Co. v. Duvall*, 20 Ky. Law 441, 46 S. W. 518, and *Union Cent. Life Ins. Co. v. Spinks*, (Ky.), 69 L. R. A. 264. If the Kentucky cases should be fully accepted as authority in the premises, then probably respondent has room for argument therefrom in favor of affirming this judgment. Appellant, however, insists that the Kentucky court has gone far in its attempt to apply the principles of waiver and estoppel in insurance cases. It may have gone further than we feel justified in going under our views of the fundamental principles governing estoppel as hereinbefore discussed and as heretofore expressed in other cases. However, while some of the facts of the Kentucky cases cited may be said to approach very nearly to those now under consideration, yet each case may be distinguished from this one by a close application of the principles of estoppel. The *Moreland* case was decided first, and the opinion in the *Duvall* case was filed on the day following, the court being divided in each case. The *Spinks* case was decided later, the court being again divided. The *Moreland* case probably approaches this in similarity more fully than either of the others, and yet the opinion states that, by the attempt of the company to collect, the assured was put to trouble and expense, thereby effecting at least some change in his situation, which is lacking as an element of estoppel in the case at bar. In the *Duvall* case the offer to waive was accepted and remittance was made four days after maturity of the note. The

amount was received and was retained by the company until it learned of the sickness or death of the insured, which occurred meanwhile, and then the money was returned.   Clearly the company was estopped to deny waiver under such circumstances.   In the *Spinks* case the insured had been in the habit of giving notes for his premiums and paying the same some time after maturity.   The payments were always accepted without question.   By custom a course of dealing was established between the two upon which the insured had a right to rely until he was notified to the contrary, and thus the company was estopped to deny a waiver.   It will therefore be seen that each case cited contains some fact giving rise to estoppel which does not exist in the case at bar.

For the reasons stated, the judgment is reversed, and the cause remanded with instructions to dismiss the action.

FULLERTON, RUDKIN, MOUNT, CROW, ROOT, and DUNBAR, JJ., concur.