# HARRY MILLER

### *vs.*

## THE HOME INSURANCE CO. OF NEW YORK.

*Fire insurance policies*: *inventories; "iron safe" clause; keeping of books.*

When the terms of a contract are clear and unambiguous, courts have no right to make new contracts for the parties, or ignore those already made by them, simply to avoid ensuing hardship.                                    p. 146

An inventory is an itemized list or schedule of articles, usually including a notation of their estimated values.        p. 144

A policy of fire insurance required the assured to take a complete inventory of the stock on hand at least once each calendar year; and unless such an inventory had been taken within 12 months prior to the date of the policy, it was provided that one should be taken within 30 days of the issuance of the policy; the policy further required the keeping of a full and complete set of books, and also contained the "fireproof safe" clause. The appellant purchased the goods constituting the stock in trade in a certain store; and at the time of so doing made a careful and detailed inventory giving his appraised valuations; this was made a short time before he assumed control, and before he took out the policy of insurance; the insured did not keep any books, nor did he keep the inventory in a safe, as required by the policy; the fire totally destroyed the goods a month or so later.

*Held,* that such an inventory was such a one as was required by the policy; and that the insured could not recover on the theory, that he had the right to make an inventory within 30 days of the delivery of the policy.        p. 144

Md.]                                    Syllabus.

It was further: *Held,* that the failure to keep in a fireproof safe such inventory and the sets of books, as the policy required to be so kept, was a failure on the part of the appellant to do that which was proper for the protection not only of the insurer but of the insured.                                   p. 147

It was further: *Held,* that since the failure of the appellant to produce the books and records that the policy provided for, was chargeable to his own default in the performance of his contractual duty, it was a bar to his recovery under the policy.
                                        p. 147

The neglect of an insured to become familiar with the terms of the policy which he seeks to enforce, does not relieve him of the binding effect of its covenants, in the absence of any evidence impeaching its validity.                      p. 147

*Decided December 1st, 1915.*

Appeal from the Superior Court of Baltimore City. (SOPER, C. J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Israel B. Brodie* (with whom was *Harry B. Wolf* on the brief), for the appellant.

*W. Calvin Chesnut* (of *Haman, Cook, Chesnut & Markell*), for the appellee.

URNER, J., delivered the opinion of the Court.

The policy upon which this suit was brought insured the appellant to the amount of one thousand dollars, against the loss by fire of his stock of general merchandise in his store at Harrisonville, Baltimore County. There was a covenant in the policy that the assured would take a complete itemized

inventory of stock on hand at least once in each calendar
year, and unless such an inventory had been taken within
twelve calendar months prior to the date of the policy, one
should be taken in detail within thirty days of its issuance,
otherwise the policy should be null and void from its date.
It was further covenanted that the assured would keep a set
of books which should "clearly and plainly present a com-
plete record of business transacted, including all purchases,
sales and shipments, both for cash and credit, from the date
of inventory as provided for in" the preceding clause re-
ferred to "and during the continuance of the policy," and
that he would keep such books and inventory, and also the
last preceding inventory, if such had been taken, securely
locked in a fireproof safe at night, and at all times when the
building mentioned in the policy was not actually open for
business, or in some place not exposed to a fire which would
destroy the building.   It was stipulated that in the event of
failure to produce such set of books and inventories for the
inspection of the insurance company, the policy should be-
come null and void, and such failure should constitute a per-
petual bar to recovery on the policy.

The case was withdrawn from the jury at the close of the
testimony offered by the plaintiff, which showed that he had
taken an inventory of the merchandise in the store when he
purchased the stock in trade, two weeks prior to the date of
the policy in suit, but that he kept no books showing his pur-
chases and sales, having merely noted in a little memorandum
book the amounts of cash received, and that he made no pro-
vision, by keeping an iron safe or otherwise, for the protec-
tion of his papers from destruction by fire.

The policy was dated May 29th, 1913, and was delivered
to the appellant two weeks later.   The contents of the store
were totally destroyed by a fire which occurred about noon
on July 5, 1913.   It was testified by the appellant that he
was sitting in front of the building, after having waited on
a customer a short time previously, when he noticed smoke

coming through the screen door, and that upon opening the door he found the room so filled with dense smoke and flames that he could not enter. He stated that he had no knowledge as to how the fire originated. The loss was estimated in his claim at $3,343.75. The goods and fixtures in the store at the time he acquired the business were sold to him for $925, but he testified that he subsequently increased the stock by purchases aggregating about $2,500. It appears that the total insurance procured by the appellant upon the merchandise and fixtures amounted to $3,000, two additional policies for $1,000 each having been obtained from other companies simultaneously with the issuance of the policy involved in the present action.

In support of his effort to recover upon the policy, notwithstanding his failure to keep a set of books showing the sales and purchases affecting the insured stock of merchandise, the appellant advances the theory that the inventory taken when he bought the business from his predecessor was not of the character intended by the covenant we have mentioned, and that no inventory of the kind contemplated by the policy having been taken within the calendar year prior to its date, the appellant was allowed by its terms the period of thirty days from the time of its issuance within which to make such an inventory and begin the keeping of books, and this period, it is argued, had not elapsed when the fire and loss occurred. The evidence in the record does not admit of the acceptance of this theory. It is clear from the appellant's own description of the schedule made by him at the time of his purchase of the store, that it had every feature which an inventory could be supposed to possess. It was a complete and itemized list of the various commodities embraced in the stock in trade, with quantities and values indicated in detail. The prices listed therein by the appellant were those representing in his judgment the worth of the corresponding articles as forming part of the general stock he was proposing to buy. Upon the basis of the schedule thus prepared he

purchased the stock and fixtures at a price closely approximating the value it disclosed. While it was made with a view to the purchase of the property and before the appellant had taken charge of the store, it was exactly the kind of an inventory that would ordinarily be expected to be made in the course of the business to meet the requirements of the contract of insurance. The appellant preserved this inventory until the time of the fire, and he could undoubtedly have relied upon its existence as a sufficient reason for not preparing another within thirty days after the policy was issued. According to its accepted definition an inventory is an itemized list or schedule of articles, usually including a notation of their estimated values; *Webster's New International* and *Century Dictionaries; Black's* and *Bouvier's Law Dictionaries; 4 Words and Phrases, 3755.* It is clear that the schedule of "stock on hand" in the store, made by the appellant on the occasion of his purchase, should be properly characterized as an "inventory" within the meaning of the provisions here involved.

In the case of *Penix v. American Central Ins. Co.* (Miss.), 63 So. 346, where the question we have been considering arose under somewhat similar conditions, it was held that a list, made by the assured, of all the goods, with their values, which were placed in the store when it was first opened for business, was an inventory within the intent of the Iron Safe Clause, and that as it had been made within a year before the date of the policy in suit, it was the duty of the assured, under the terms of the clause, to keep the books therein specified, without waiting to take another inventory within the thirty-day period.

The cases cited on behalf of the appellant upon this point differ in their facts from the one presented by this record, and they are not opposed in principle to the view we have expressed.

It having been ascertained that an inventory of the insured stock in trade was taken within the calendar year prior

to the date of the policy and within the purview of its provisions, the conclusion necessarily follows that it was the duty of the assured, as the policy expressly required in that event, to keep a set of books "during the continuance" of the insurance, presenting a complete record of the business, including purchases, sales and shipments. The importance of this and other provisions of what is commonly known as the "Iron Safe Clause" of insurance policies is plainly apparent and has been repeatedly emphasized. The effect of such a covenant, if duly observed, is to safeguard the interests of both parties to the contract. It provides a protection to the insurer against possible misrepresentation as to the quantity and value of merchandise for which indemnity is claimed, and it affords the assured a reliable and convenient method of ascertaining and proving the real extent of his loss. This Court has had occasion in two recent cases to consider Iron Safe Clauses which were identical in their phraseology with the one now before us, and the covenants they contain were held to be reasonable and desirable and to be enforceable according to their terms.

In *Joffe v. Niagara Fire Ins. Company,* 116 Md. 155, the insured stock of merchandise was burned while the shopkeeper and attendants were absent at lunch, the store being left unoccupied and with its door locked. The books of the business were in the store at the time and were lost in the fire. They were not kept in a fireproof safe while the store was closed on the occasion just mentioned, no such receptacle for the books having been provided. It thus appearing without dispute that, during a period when the store was "not actually open for business," the books were not protected by the assured in the manner prescribed by the covenants of his policy, the Court ruled that an action to recover the amount of the insurance could not be maintained. It was said, in the opinion delivered by CHIEF JUDGE BOYD, that the Iron Safe Clause "has been very generally recognized as valid and reasonable, and has been declared to be useful and

desirable, not simply for the insurer, but for the honest in-
sured," and that "when the terms of a contract are clear and
unambiguous, courts have no right to make new contracts for
the parties, or ignore those already made by them simply to
avoid seeming hardships."

The case of *Reynolds* v. *German American Ins. Co.*, 107
Md. 110, involved the application of the covenant in the
Iron Safe Clause requiring the assured to take an inventory
of the stock within thirty days of the issuance of the policy,
unless one had been taken within twelve months before its
date. No inventory having in fact been taken within the
prior period, the assured was obligated to make one within
thirty days after the policy was issued. This he failed to
do, and while an inventory was prepared before the occur-
rence of the loss by fire for which the suit was brought, it
was not taken until after the expiration of the time limited
in the covenant. It was held that by the express terms of the
policy it became null and void upon the failure of the assured
to take an inventory within thirty days after its issuance,
and that the subsequent preparation of an inventory could
not have the effect of reviving the policy without the insur-
er's consent. The Court said that there was no ambiguity
in the covenant, and no question of waiver involved, and there
was no justification for setting aside the valid and reason-
able terms of the contract "because the insured, subsequent
to the thirty days, did what he was required to do within
that time." The inventory was taken two weeks after the
thirty-day period had expired, and it was contended that this
was a substantial compliance with the provision of the policy
on that subject. This contention was overruled, the Court
holding that the taking of an inventory fourteen days after
the policy had become null and void could not be regarded as
a substantial performance of the duty it imposed.

The decisions of this Court to which we have thus referred
are in accord with the general trend of judicial opinion in
favor of the due enforcement of the Iron Safe Clause in

pursuance of the intention of the parties as expressed in its provisions.   19 *Cyc.* 761, and cases there noted.

In the case presented on this appeal there has been a conceded failure to keep any books showing the current changes in the quantity and value of the stock caused by purchases, sales and shipments.   The inability of the appellant to produce such books, after the fire, is not due to their accidental loss or destruction, without default or neglect upon his part, as in *Scottish Ins. Co.* v. *Keene,* 85 Md. 263, but to the fact that no such records were ever in existence.   It was his plainly defined duty, as we have found, to keep the set of books specified in the policy *during its continuance,* and no effort was made to fulfill this obligation.   The appellant testified that he was not aware of such a requirement in the policy, but his neglect to become acquainted with the provisions of the insurance contract which he is seeking to enforce can not relieve him of the binding effect of its covenants, in the absence of any evidence tending to impeach its validity. *Bakhaus* v. *Caledonian Ins. Co.,* 112 Md. 695.   The failure of the appellant to produce the books for which the policy provides being chargeable to his default in the performance of his contractual duty to keep such records, there is no ground upon which we may properly refuse to enforce the covenant that the non-production of the books shall be a bar to recovery on the policy and shall render it null and void.

Other questions were raised in the argument, but their decision is not essential to the determination of the case.

*Judgment affirmed, with costs.*