BESSIE E. BURNS *v.* PRUDENTIAL INSURANCE COMPANY OF AMERICA.
[No. 40, January Term, 1932.]

*Decided April 4th, 1932.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*H. Mortimer Kremer,* with whom was *Arthur R. Padgett* on the brief, for the appellant.

*John Henry Skeen,* with whom were *Emory, Beeuwkes, Skeen & Oppenheimer* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

William S. Burns was accidentally killed by an automobile at ten o'clock on the night of November 25th, 1930. His widow brought the action at bar on two policies of insurance, which had been issued on his life by the Prudential Insurance Company of America, and in which she had been named as the beneficiary. The *nisi prius* court denied a recovery, on the theory that both policies had lapsed during the life of the assured for failure to pay the premiums according to the terms of the policy. The plaintiff has appealed, and assigns as error that there was legally sufficient evidence from which either the payment of the premiums or the waiver of a default in their payment could have been found.

Burns had been separated from his wife since June, 1930. About noon on the day of his death, Victor P. Kew called at the home of the wife, and inquired for Burns, and was informed that he would be there that evening. Kew returned after supper, and waited until about eight o'clock, when he left. Burns did not come, and was killed not more than two hours after Kew's visit. While Kew was there at night, he informed Mrs. Burns that his object was to see her husband in reference to his insurance, and, according to the testimony of the wife, "said he wanted to talk to him as my husband had left his insurance go for a week at a time and he wanted to talk to him not to do it any more. I asked him was the insurance all right at the time. He said, Yes, it is." The recollection of Mrs. Katherine Hartman, who was present, is slightly different. Her version is that "Mrs. Burns said, what is it you want to see me about, Mr. Burns' insurance;

and he said about his insurance, was all right in the meantime, that it was back a week or so, that he would come back to her to see Mr. Burns about his insurance about keeping it up."

Victor P. Kew is the assistant superintendent in the Baltimore office of the insurance carrier, whose home office is in Newark, N. J. The statements imputed to Kew are not consistent, but, if they be given their most adverse construction against the carrier, the language used would be a declaration by an agent that, although there had been default in the payment of premiums, the insurance was effective at the time of the conversation. On the day Kew called on the wife, he wrote a letter to the assured's brother at Wilmington, Del., in which the writer expressed the opinion that "due to family estrangement, I assume that the money which he sends to pay for his insurance goes for other purposes. The agent who has this business in his charge has been taking care of it and I ask that you urge your brother to consider taking care of this. I have also written to him care of Edgemore Yards Office and explained matters as they are." The letter of Kew to the assured is not in evidence. There is, however, nothing in the proof thus far recited to base an inference that the carrier had been paid, either by the assured or by any one in his behalf, the accrued due premiums. In fact, everything mentioned negatives payment. The reference in Kew's letter is to the agent's past conduct, and the appeal is for the assured to meet his present obligations. If any doubt existed, correspondence offered by the plaintiff established that the two policies had lapsed before the death of the assured because of his failure to pay the premiums which had accrued due. The proof is one policy so lapsed on July 21st, 1930, and the second one on August 18th, 1930.

On November 30th, 1930, Kew requested and obtained from the widow the two insurance policies, kept them three weeks, and then returned them without explanation. The beneficiary was later notified that the insurance would not

be paid, because the policies had lapsed during the life of the assured.

The first policy to lapse was issued on April 21st, 1930, and, in consideration of the payment in the manner specified of the monthly premium prescribed, the sum of $2,000 became payable to the wife upon due proof of the accidental death of the assured during the continuance of the policy, and upon surrender of the policy and evidence of premium payment. The premium was payable on or before the 21st day of every month at the home office or to an authorized representative of the company, in exchange for an official receipt signed by the president or the secretary and countersigned by such representative; and such payments, to be recognized by the company, must be entered at the time of payment on the premium receipt book belonging with the policy. If the premium be not called for when due, the policyholder, before the premium is overdue thirty-one days, must bring or send the premium to the home office of the company or to one of its district offices, and the policyholder was allowed a grace of thirty-one days for the payment of a premium, and during this period the policy would remain in force. The policy, also, contained a general provision that the payment of any premium did not maintain the policy in force beyond the date when the next payment became due. If the policy, which contained and constituted the entire contract between the parties, should lapse for nonpayment of premium, it could be reinstated at any time thereafter upon written application and payment of arrears of premiums, with interest, provided evidence of the insurability of the assured satisfactory to the company be furnished.

The second policy to lapse was issued on September 17th, 1928, and, in consideration of the payment in the manner stipulated of the weekly premium mentioned, a series of twenty-six weekly instalments of $19.40 each became payable to the wife upon receipt of due proof of the death of the assured during the continuance of the policy. The premiums became due every Monday, and were payable at the home office of the company, but might be paid to an authorized

representative · of the company, and such payment, to be recognized by the company, must be entered at the time of payment on the premium receipt book belonging with the policy. If for any reason the premium should not be called for when due, it became the duty of the policyholder, before said premiums should be in arrears four weeks, to bring or send the premiums to the home office of the company or to one of its district offices. Should the assured die while the premium on the policy was in arrear for a period not exceeding four weeks, the company would pay the installments, but, after the expiration of this period of grace, the company's liability under this policy would cease, unless, within one year from the date on which premiums had been duly paid, the policy would be reinstated by the payment of all arrears, provided evidence of the insurability of the insured satisfactory to the company had been furnished, but such reinstatement should not take effect unless at the date thereof the assured were living and in sound health.

This summary of the most important terms of the two policies discloses a striking similarity in language and object. The emphasis is laid upon the payment of premium as the cardinal obligation of the assured, and as the condition precedent to the assurer's liability. Not only is the accrual date of the premium fixed, and a period of grace prescribed in the contingency of a failure on the part of the assured to pay the premiums when due, but an opportunity is afforded, on given terms, to revive a contract which has been determined by the assured's default. These provisions make clear that the parties contracted with reference to the precise effect of a failure of the policyholder to pay the agreed premium. So the court will not relieve either party of consequences which he contemplated, especially when in both of the contracts now before the court it is explicitly declared that no condition or provision of the policy can be waived or modified in any case except by an indorsement on the policy over the signature of the president or other officer of the company; and that "No agent has power in behalf of the company to make or modify the policy or any other

contract of insurance, to extend the time for paying a premium, to waive any forfeiture or to bind the company by making any promise or by making or receiving any representation or information."

It has been expressly held by this court that such provisions do not apply to circumstances which relate to the inception of the contract nor to stipulations to be performed after the contingency happens against which the insurance is written, but that these provisions are controlling with reference to whatever may be within their purview during the period between the time when the policy becomes operative and the happening of the contingency upon which indemnity or compensation depends. *Rhode Island Insurance Co. v. Phelps,* 141 Md. 362, 369, 118 A. 749; *Dulany v. Fidelity & Casualty Co.,* 106 Md. 17, 66 A. 614; *Reynolds v. German American Ins. Co.,* 107 Md. 115, 68 A. 262; *Crook v. New York Life Ins. Co.,* 112 Md. 268, 75 A. 388; *New York Life Ins. Co. v. Rogers,* 156 Md. 88, 92, 143 A. 651; *Forwood v. Prudential Ins. Co.,* 117 Md. 260, 83 A. 169; *Goebel v. German American Ins. Co.,* 127 Md. 419, 96 A. 627; *Great Eastern Casualty Co. v. Schwartz,* 143 Md. 452, 122 A. 647; *Travelers' Ins. Co. v. Melman,* 147 Md. 459, 469, 128 A. 125.

At the time of Kew's visit to the plaintiff and his writing of the letter to the brother, the plaintiff's husband was living, but there had been a default in the payment of the premiums on each policy beyond the period of grace to the extent of two months in one policy and three months in the other. It follows from the authorities cited that Kew, an assistant superintendent in the local Baltimore office of the insurer, had, by the express limitations and restrictions of the policy, no power to extend the time for paying the premiums, nor to waive any forfeiture nor to bind the company by any representation. Both the insured and the beneficiary were charged with notice of these provisions of the policies. *Crook v. New York Life Ins. Co.,* 112 Md. 277, 75 A. 388; *Miller v. Home Ins. Co.,* 127 Md. 140, 147, 96 A. 267; *McCann v. Supreme Conclave, Improved Order of Heptasophs,* 119 Md.

655, 665, 87 A. 383. As was said by Judge Alvey in *Busby v. North America Life Ins. Co.*, 40 Md. 583: "The principle seems to be well settled, that where the authority of the agent does not extend to making a new contract of insurance, he cannot waive a forfeiture and revive a contract that has expired." Consequently, the declaration of Kew to the plaintiff neither waived the forfeitures nor revived the contracts, and neither the husband nor the wife could be deceived or misled by the declaration of an agent, who was known to them to be acting beyond the scope of his actual or apparent authority.

Furthermore, the statements relied on were not made by Kew to the insured nor communicated to him, and so did not induce him to alter or change his position to his hurt nor to refrain from payment of the arrears of premiums in default, nor to obtain other insurance. Nor did the representation of the local agent Kew to the beneficiary cause her to adopt a prejudicial course to her hurt. The burden of proof was on the beneficiary to show her belief in the statement of the agent that the policy was in force, and the reasonableness of this belief, and her reliance on this belief to her prejudice. 1 *Williston on Contracts*, sec. 758; *Crook v. New York Life Ins. Co.*, 112 Md. 282, 75 A. 388. This burden is not met. There is no pretense that there is any testimony that the beneficiary contemplated paying the past-due premiums or was diverted from such a purpose as a consequence of any representation made. If she had paid all arrearages in full to the agent, he could not have waived the other condition for the revival of the policies, that the insured furnish satisfactory evidence of continued insurability; and she could not have obtained this evidence because of her husband's imminent death. Apart from the beneficiary's knowledge that she could not rely on the declaration of the agent that the policies were in force, and so was not misled, the circumstances on the record afford irrefutable proof that the beneficiary sustained no injury as a consequence of the agent's statement.

No inference is justified by the record that the insurer had

ever delegated to the agent Kew the power or authority to waive any of the provisions of the contracts, nor does there appear any circumstances in the course of the dealings between the insured or his beneficiary and the agent which would lead to the belief that the agent had such authority. The unauthorized statement of the agent had no binding effect on his principal. The agent's statement that, although the premiums were not paid the policies were in effect, was nugatory until made binding by the agreement of both parties. The policyholder knew that a failure to pay the premium within the period of grace caused the policy to lapse, and his refusal to pay and to avail himself of his conditional option to have the policy reinstated were a decisive indication of his purpose to terminate his insurance. It was the insured's privilege to end his contract by a refusal to pay the premium, and thereby he did not become a debtor of the insurer, and so there was no enforceable liability on his part for the unpaid premiums on the policy, and no liability on the part of the insurer on the policy after the expiration of the period of grace. *Richards on Insurance* (3rd Ed.), sec. 37; *Stockley v. Benedict,* 92 Md. 325, 333, 48 A. 59; *Dungan v. Mut. Benefit Life Ins. Co.,* 46 Md. 489, 496. In order, therefore, for a contractual relation to be revived, independently of the provisions of the policy, there must be what is substantially a new agreement on the basis of the unauthorized offer of the agent to reinstate the policy. A promise of the party, who had been insured, to pay, or his payment of, the premiums, would be evidence of his acceptance of the agent's offer to renew his insurance, and a receipt of the premiums, or a taking of a promise to pay the premiums, from the policyholder by the insurer, with knowledge of all the material circumstances, would constitute an adoption or ratification of the agent's unauthorized act, and give rise to what is fundamentally a new contract in the modified terms of a former policy, although the same result is usually achieved through the principle of election or of waiver and estoppel. *Lantz v. Vermnot Life Ins. Co.,* 139 Pa. 456, 21 A. 80; *Baltimore Life Ins. Co. v. Howard,* 95

Md. 244, 52 A. 397; *Amos v. United States Casualty Co.,* 131 Md. 471, 102 A. 1001; *Bradley v. Potomac, etc., Co.,* 32 Md. 108, 114 115; *Busby v. North America Life Ins. Co.,* 40 Md. 572, 582-586; *Williston on Contracts,* sec. 693.

On the other hand, an agent, who is known by the assured or his beneficiary to be without actual authority to waive a term or condition of a policy of insurance, whose breach causes the policy to lapse, cannot, by merely demanding payment of an overdue premium, which had caused the policy to lapse, and by stating that the policy would be in force until the premiums be paid, reinstate the policy and preclude, for that reason, the insurer from thereafter refusing to fulfill its contract. This rule rests on the obvious principle that an agent must have sufficient actual or apparent authority to bind the insurer. *Supra.* The case of *Crook v. New York Life Ins. Co.,* 112 Md. 268, 279, 280, 75 A. 388, is conclusive on this point. See *O'Reilly v. Corporation of London Assurance,* 101 N. Y. 575, 5 N. E. 568; *Iowa Life Insurance Co. v. Lewis,* 187 U. S. 335, 354, 23 S. Ct. 126, 47 L. Ed. 204. Even if the agent had sufficient authority, an ineffectual attempt to collect a past-due premium should not be held a waiver of the breach of condition, because, as remarked by Mr. Williston, "The facts doubtless show that the insurer or landlord is willing to accept payment at the time when demand is made and, on condition that the payment is then made, to disregard the delay up to that time, but they do not show a willingness to keep the contract in force even though the payment is not made." *Williston on Contracts,* sec. 761. There are decisions to the contrary.

While the case of *Amos v. United States Casualty Co.,* 131 Md. 471, 478-481, 102 A. 1001, did not discuss the point, the decision implicitly supports the view expressed by Mr. Williston. In that case, the record shows that the insurer sent to its local agent renewal agreements for all policies which would be due the month of December, 1914. These agreements were executed by the carrier, but were not effective until the premium on a policy was paid, when the corresponding agreement would be countersigned and de-

livered to the proper assured. At the end of the month the agent, as was customary, remitted to the carrier its proportionate share of all the premiums on the policies for which the renewal agreements had been forwarded to the agent. Among the policies was one of James W. Amos, who did not pay the premium on its due date of December 29th. Although afterwards requested by the agent to pay, the policyholder continued in default, and the agent wrote the insurer on February 9th, 1915, requesting permission to hold the renewal agreement for thirty days longer with the hope of collecting the premium. The insurer granted this extension, and on April 6th the agent wrote the insurer that the policyholder had not paid the premium, returned the renewal agreement to the insurer, and asked the insurer to send the renewal agreement to him in the event the defaulting policyholder would pay the premium. On the receipt of this communication, the insurer canceled the policy as of December 29th, 1914, and on April 14th, 1915, refunded to the agent his remittance of the company's part of the premium, as was the usual course of their business when a policyholder defaulted. On June 4th, 1915, the policyholder died, and the company refused to pay the insured's beneficiary the amount of the policy on the ground that it was not in force, and suit was brought to recover the insurance.

Here is a typical case of an ineffectual and authorized attempt of the agent to collect a premium after the policy by its terms had ceased to be in force by reason of the premium remaining unpaid, but this circumstance was not noted as possibly precluding the insurer from thereafter refusing to carry out his contract; and the court flatly held that there could be no recovery on the ground that the premium had not been paid by the agent for the assured at his request, and accepted by the company as an unconditional payment of the premium. If the court had not so held, the company would have been made to bear the risk without consideration. *Dungan v. Mutual Benefit Life Ins. Co.*, 46 Md. 469; *Knickerbocker Life Ins. Co. of New York v. Dietz*, 52 Md. 29. There is no justice nor reason in holding the insurer bound upon the

contract, after default in the payment of the premium, because the insurer had sought unsuccessfully to collect without suit the past-due premium, and letting the delinquent remain free to elect to be bound or not as his interest or circumstances might determine. It is indisputable that the assurer could not compel the husband to pay the accrued due premiums; and that an importunity by the assurer to obtain their payment imposed no liability upon the party importuned. So, if A, the defaulting policy-holder, does not become bound, by reason of B's solicitation, to pay to B, the insurance carrier, the past-due premiums for the current and unexpired period for which the insurance has lapsed because of A's failure to pay the premiums, upon what principle of law and reason should B's unavailing solicitation make B unable to deny his liability to pay A or his beneficiary the insurance specified upon the happening of the event on which the insurance was made to depend? The element lacking is reciprocity of obligation. It is clear that it was for the very purpose of preserving mutuality and protecting the insurer from risk, without consideration actually received before loss, that one of the policies makes it a condition of liability that evidence be furnished of the premium payments agreed, and that the payment of no premium shall maintain the policy in force beyond the date when the next payment becomes due and the period of grace allowed; and that the other policy requires weekly payments of the premium, and stipulates that, if the insured should die while the premium is in arrears, for a period not exceeding four weeks, the company will pay the arrearages, but, after the expiration of this period of grace, the company's liability shall cease. *Bradley v. Polomac Fire Insurance Co.*, 32 Md. 115, 3 Am. Rep. 121.

The proper inference to be drawn from the facts on this record is that there was an unauthorized offer by the agent that the policy would be reinstated upon the payment of the premiums before the death of the policyholder. So, even if the agent had been properly empowered, the payment was not so made and the policies remained lapsed. *Ware v. Millville Mut. Marine & Fire Ins. Co.*, 45 N. J. Law, 177, 181;

*Ewart on Waiver Distributed,* pp. 231-232; *Edge v. Duke* (1849), 18 L. J. (N. S.) Ch. 183; *Cohen v. Continental Fire Ins. Co.,* 67 Tex. 325, 3 S. W. 296; *Cowen v. Equitable Life Assur. Soc.,* 37 Tex. Civ. App. 430, 84 S. W. 404; *Linn v. New York Life Ins. Co.,* 78 Mo. App. 192; see notes in 18 *L. R. A.* (N. S.) 902; *Iles v. Mut. Reserve Life Ins. Co.,* 50 Wash. 49, 96 P. 522.

Upon the record at bar it would seem clear that the plaintiff is not entitled to recover on either of the two policies, and the judgment will therefore be affirmed, although the demurrer prayer is faulty in limiting its application to the evidence offered by the plaintiff instead of embracing all the testimony in the case.

*Judgment affirmed, with costs.*