THE KNICKERBOCKER LIFE INSURANCE COMPANY OF
THE CITY OF NEW YORK *vs.* PAULINE DIETZ.

*Life Insurance—Failure to pay Interest on Premium Notes—
Forfeiture—Equity will not relieve.*

In contracts of Life insurance, the time for the payment of interest on
the premium notes, is of the very essence of the contract, and must
be strictly complied with; and if by the terms of the policy, it is
to become void upon a failure to pay such interest at the time
specified, equity will not relieve against the forfeiture.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued for the appellant before BARTOL,
C. J., BRENT, GRASON, MILLER and ROBINSON, J., and sub-
mitted for the appellee.

*Charles Marshall,* for the appellant.

The Court below, adopting the view of the Court of
Appeals of Kentucky, in the case of *St. Louis Mutual Life
Ins. Co. vs. Grigsby,* 10 *Ky. State Reports,* 310, held that
it was competent for a Court of equity to relieve the com-
plainant from the consequences of her default, inasmuch
as the company could be compensated out of the policy,
and would sustain no loss. It regarded the second con-
dition of the policy as imposing a penalty against which
it could relieve on giving compensation.

The question is a vital one to the insurance business;
and it is submitted the decision cannot be sustained on
principle, and is against the great weight of authority.

The decree is founded upon an erroneous view of the contract of insurance. It is not a continuing contract. The company has no power to compel the payment of interest or of the premium. It continues as long as the insured chooses that it shall, and no longer. By paying or tendering at the proper time the money necessary under the contract to keep the policy in existence, whether that money be premium or interest on premium, the insured may hold himself and the company bound by all the terms of the agreement; and by refusing to pay, he may discharge himself from all obligation. Under these circumstances, it is manifestly repugnant to the idea of mutuality in the contract, to hold that the company shall be bound, at *any time*, at the will of the insured, he being at the same time under no obligation himself. *Bradley vs. Potomac Fire Ins. Co.*, 32 *Md.*, 115; *Busby vs. The North Am. Life Ins. Co.*, 40 *Md.*, 586.

The doctrine of *penalties*, with all respect, has nothing to do with the case. The forfeiture of the policy on non-payment of interest or premium, is in no sense a penalty for *non-performance of a duty that the company had the right to require to be performed, or which the assured had agreed to perform.* It is a mere declaration, that if the assured elect at the end of any year not to renew the contract, it shall not be renewed; but he being discharged, the company shall be also.

These contracts are based upon nice and accurate calculations, the elements of which are derived from laborious and extensive study of vital statistics. The general theory upon which the amount of the premium is fixed, is, that assuming that a man of a given age has a prospect of living a certain number of years, as shown by experience and observation, the premium charged is such a sum as invested annually at a certain rate of interest, and compounded, will at the end of that time amount to enough to pay the policy and cover the expenses of the company.

To reach this result, all the elements of the calculation must concur. The premium must be paid, it must be invested, and the interest from it must be re-invested at the assumed rate, otherwise the ability of the company to pay the policy, instead of being a matter of reasonably accurate calculation, becomes a mere matter of hap-hazard. The business ceases to have any scientific or accurate basis, and every policy is the veriest wager on the life of its holder.

It is evident that these remarks apply equally to the case in which the company collects the whole premium, and invests and re-invests it and its proceeds, as to those in which it invests part by lending it to the assured himself on the security of his policy. In either case it is indispensable that the interest be promptly paid, in order to be re-invested, according to the principle on which the amount of premium is fixed. It would be easy to illustrate the working of the decision in this case, by supposing a large amount of the company's money invested in loans of this character, and supposing the company to be deprived of the opportunity of re-investing the interest promptly by the default of the policy-holders. It is manifest that the whole calculation on which the rate of premiums had been fixed, would be frustrated, the rates would be too low, the premiums would fail to provide the means to pay the policy when it becomes payable in the ordinary course of things, and ultimate ruin of the company would be absolutely and mathematically certain.

It follows from these considerations, that strict compliance with the terms of the contract, as to payment of premiums and interest, is *necessarily*, from the very nature of the business of life insurance, *of the essence of the contract;* and that no dispensing power can be exercised over such contracts by the Courts, without absolutely defeating the end and object of one of the contracting parties, and ultimately of both.

Knickerbocker Life Ins. Co. of New York *vs.* Dietz.

These principles are recognized and asserted in the following well-considered cases:—*N. Y. Life Ins. Co. vs. Statham, et al.*, 93 *U. S.*, 24; *Pitt vs. Berkshire Life Ins. Co.*, 100 *Mass.*, 500; *Robert vs. N. E. Mut. Life Ins. Co.*, 1 *Disney*, 355; *S. C.*, 2 *Disney*, 106; *Baker vs. Union Mutual Life Ins. Co.*, 43 *N.* Y., 283; *Roehner vs. Knickerbocker Life Ins. Co.*, 63 *N. Y.*, 160; *Anderson vs. St. Louis Mutual Life Ins. Co.*, 5 *Bigelow Life & Ac. Ins. Rep.*, 527; *Russum vs. St. Louis Mut. Life Ins. Co.*, 5 *Bigelow*, 243; *Nettleton vs. St. Louis Mut. Life Ins. Co.*, 6 *Ins. L. J.*, 426; *Patch vs. Phœnix Mut. Life Ins. Co.*, 44 *Verm.*, 481; *Davis vs. Thomas*, 1 *Russ. & Mylne*, 506; *Ensworth vs. Griffiths*, 5 *Brown's Par. Cases*, 184.

*Thos. R. Clendinen*, for the appellee.

The appellee, in consideration of the payment of the premiums for five years, as to which there is no dispute, was absolutely entitled at any time thereafter to a paid-up policy.

In the issuance of such new policy the appellant was not entitled to insert any terms or conditions not embraced in, or not provided for by the original policy, unless agreed to by the appellee. If any terms not agreed to by the appellee have been inserted in the new policy by the appellant, they cannot affect the former.

There is no evidence that the appellee ever agreed to the condition now insisted upon by the appellant, but on the contrary she never heard of it until she found the policy in the house.

It would have been the province of a Court of equity to have enforced the issuance of a proper policy under the provisions of the original one.

This present policy with the condition of forfeiture is not a proper policy, nor such a one as is warranted by the terms of the original contract, or anything done or agreed to by the appellee.

It is in the power of a Court of equity to do now what it could have done before, had it then been called upon to direct a proper policy to be issued.

As the loss has now occurred, it is in the power of a Court of equity, while construing the contract and reforming it to whatever extent is necessary, to go further, and decree payment of the money. A resort to a Court of equity, being necessary under the circumstances of this case, the Court had the undoubted right to decree payment.

As this is a contract of *loan as set up by the appellant* to the amount of $183.91, and as the paid policy was pledged for its return, according to the expression in the policy, $183.91 are now charged against the policy, it should be governed and regulated by the usual and ordinary rules which affect and govern loans and the pledging of security therefor, and there should not be in this case, as we believe there is not in law or justice anywhere, one rule for individuals and another for insurance companies.

Judged by such well known and universally recognized rules, full justice is done the appellant when the entire *loan* it claims, and the *interest*, is deducted from the principal it covenanted to pay.

Being a default only in *time*, it admits of certain and adequate compensation by the allowance of the deduction of *the loan and interest* from the principal debt.

None of the rules or reasons which apply to the payment of *premiums on the day when* they are stipulated to be paid, apply to or have any force in reference to the payment of interest under the circumstances of the present case, because a premium is a sum paid in insurances *invariably* in *advance*, and is the consideration because of which the insurer undertakes to carry the risk for any stipulated period in the future; the insurer is thereby *paid* for a risk to cover some period in the future yet to come and unexpired.

While in this case such *premiums* had been paid in *advance* for five years, and the payment of them had ceased, no *premium* was paid or demanded in 1873, none in 1874. *Interest* was then claimed. Interest for what? Why the detention of the sum of $183.91, *a loan* which the insured (the dead man) owed the appellant. It is not even a debt which the appellee owed, and there is no pretence that she ever was such debtor or was ever a party to the arrangement by which it became due.

There is some reason in the payment of *premium in advance;* and the just reason why an insurer is not liable on account of its non-payment is, that he has not been paid for the risk; but in this case he had been paid; he had gotten five years' *premium;* the contract was executed; the insurance was absolute for the term of his natural life. There was a *loan,* however, from the insurer to the insured of $183.91, on which *loan* the insurer, like many other people who loan money, desired interest annually *at the end of the year, not in advance,* (as was the case with premiums,) for the reason that, being an ordinary debt, *interest was to be paid at the end of the year,* for its detention; just as it would have been in an ordinary transaction, if both parties had been private individuals, and one had not happened to be an insurance company. Suppose the appellee or her husband had borrowed $183.91 from any one else than the appellant, and this same policy had been pledged for its ultimate payment, with the same clause as to forfeiture upon non-payment of *interest on the day* it was due, as is found in the new policy—we venture to say it would never be asserted in a Court of equity that forfeiture would follow under such circumstances as the present case presents. Then, why should it follow here?

The simple fact that the appellant is the creditor, certainly gives it no right which would not be possessed by any other creditor. And if not, why should the appel-

lant ask for a different measure of justice from that which would be meted out to others.

The appellee is not bound or affected by anything done between the appellant and the appellee's husband, as neither had the right upon either policy to affect her interest, and as the stipulations as to forfeiture in the new policy and the note for loan were inserted without her knowledge or consent, they do not affect her in any way.

The loan by the appellant to the appellee's husband was not a proper set-off to her claim against it, as she was not a party to the same; and while she, in her bill of complaint, expressed a willingness to have it deducted, it was not on the ground of its being due by her, but because she desired to have deducted whatever was rightly due by her husband, in consequence of which, in the decree of the Court below, the full amount of the loan, ($183.91,) with interest to August 1st, 1878, was deducted from the amount of the policy and interest due the appellee.

Even if the appellee was aware of the exchange of policies, the loan by her husband and the stipulations in the policy and note as to forfeiture, and consented to them all, she is still entitled to recover, as this is an unconscionable contract, and in the nature of a penalty and forfeiture against which it is in the power and province of a Court of equity to relieve.

There is in the old policy no provision made for the forfeiture of the new policy on any account whatever; it says "without subjecting the assured to any subsequent charge, except the interest annually on all premium notes remaining unpaid on this policy;" it does not anywhere say that it would require the *payment* of interest annually; and how can it justly claim to forfeit a policy on account of non-payment? It seems to us manifest that the stipulations in the new policy requiring payment in cash of interest, and forfeiting the policy in default thereof, were never contemplated between the parties, were never agreed

to or understood, and are improperly there. It is clear that the loan itself was not to be paid in cash, and it is equally clear that there was no provision in the stipulation in the original policy under which this new one was obtained, that the interest was to be paid. The expression is *charge*, which, according to Webster, is a burden and imposition, and that which constitutes a debt, the loan not being paid.

Interest was to be charged as it ordinarily is when a loan is not paid, and that was to be charged against the new policy.

The real contract is expressed in the new policy where it says:

" And the said company do hereby promise and agree to pay the amount of said insurance in three months after satisfactory proof of the death of the person whose life is hereby assured, the said notes or credits and *any interest thereon* being first deducted therefrom "—and it should be so construed.

The condition to forfeit a paid up policy for non-payment of interest is repugnant to the contract or grant by which it is created, and therefore void. *Story's Eq. Juris., sec.* 1304.

It is not a condition precedent, but a condition subsequent, and the rights of the assured became absolute. *Story's Eq. Juris., sec.* 1306. Courts of equity give relief. *Story's Eq. Juris., secs.* 1312, 1313, 1314, 1.

It is an universal rule in equity never to enforce either a penalty or a forfeiture. *Story's Eq. Juris., sec.* 1319. A condition for the payment of premium after the first, is not a condition precedent, &c. *Mutual Benefit L. I. Co. vs. Hellyard, et al.,* 4 *Ins. L. J.,* 128 and 168.

A party having a ten year non-forfeiture policy, entitled to a paid up policy after four payments, part cash, part note, and the note considered an absolute payment, and the amount thereof a loan by company to insured, the

policy was not forfeited by a failure to pay interest. *Ducher vs. Brooklyn L. I. Co.*, 4 *Ins. L. J.*, 812; (*see "The Reporter," Jan.* 23, 1878;) *Little vs. Northwestern M. L. I. Co.*, 5 *Ins. L. J.*, 149; (*see "The Reporter" of Feb.* 27, 1878;) *Ohde vs. The Northwestern L. I. Co.*, 40 *Iowa*, 357; *New England M. L. I. Co. vs. Hasbrook's Adm'x*, 32 *Ind.*, 447; *St. Louis Mutual L. I. vs. Grigsby*, 10 *Bush.*, *Ky.*, 310.

GRASON, J., delivered the opinion of the Court.

It appears from the record in this case that, on the fifth day of May, in the year eighteen hundred and sixty-eight, Lewis Dietz obtained from the appellant a policy of insurance on his life for the benefit of his wife, the appellee, for the sum of two thousand dollars, the annual premium on which was one hundred and eight dollars and thirty-two cents. This policy was of the character known as a ten year policy, requiring the payment of the annual premium for ten years, at the expiration of which time the payment of premiums was to cease. Under this policy half of the annual premiums was to be paid in cash, and premium notes given for the other half. The premium notes were not to be paid until the policy itself became due and payable, when they were to be deducted from the amount secured by the policy. The interest on these notes was to be paid annually on the fifth day of May in each year, during the continuance of the policy, and if not so paid, the policy contained a provision that, the policy should become void. It contained a further provision, that, if after two or more payments of premiums were made, the policy should cease, in consequence of the non-payment of premiums, then upon a surrender of the same, the appellant would issue a new policy for the full value acquired under the old one, subject to any notes that should have been received on account of premiums; that is to say, that, if payments for two years should have been

Knickerbocker Life Ins. Co. of New York *vs.* Dietz.

made, it would issue a new policy for two-tenths of the sum originally insured; if for three years then for three-tenths and in the same proportion for any number of payments made, without subjecting the assured to any subsequent charge except the annual payment of the interest on all premium notes remaining unpaid at the time of issuing the new policy. The policy of 1868 was to become void if the insured should fail to pay the annual premium on the day appointed for its payment, or to pay, at maturity, any note (other than the annual premium notes) given for premium interest or other obligation on said policy. The insured paid part of the annual premium in cash, and gave his notes for the balance up to the 5th May, 1873, when he surrendered his policy and obtained a new policy for five-tenths of the amount originally insured, to wit, for one thousand dollars. The second policy, thus issued, states that it was so issued in consideration of the surrender of a policy theretofore issued by the appellant on the life of Lewis Dietz and of the representations made to the appellant in the application therefor, and upon the faith of which the present policy was issued, and upon the payment of the interest annually on all notes or credits given for premiums on the surrendered policy, (which notes or credits, amounting to one hundred and eighty-three dollars and ninety-one cents, are now charged against this new policy) on or before the fifth day of May in each year until said notes or credits are paid. The new policy further states that it is issued, and is accepted by the assured upon the express condition and agreement, amongst others, that if the interest upon the notes or credits shall not be paid on or before the days named in the policy for payment thereof as therein provided, the company shall not be liable to pay the sum assured, or any part thereof and said policy shall cease, and be null and void, without notice to any party or parties interested therein. This policy was issued on the fifth day of May,

1873, and the interest on the premium notes, then remaining in the hands of the appellent, was paid to that date, but it was not paid or tendered on the fifth day of May, 1874, and the policy was cancelled on the books of the appellant. At the time this policy was issued Lewis Dietz gave his note to the appellant by which he promised to pay the interest on the sum of one hundred and eighty-three dollars and ninety-one cents on the fifth day of May in each year, and by which he also stipulated that the loan of the aforesaid sum of money should be a proper offset, or counter claim, against any amount which might become due or payable upon the policy, and that the appellant should deduct such sum from the amount to be paid thereon, and that the failure to pay said interest at the times specified in said note, should cause the policy to cease and determine. It also appears that a short time after the 5th May, 1874, the appellee tendered the amount of interest, due on that day, to the appellant's agent in the city of Baltimore, and that he declined to receive the same. Lewis Dietz was taken sick in December, 1874, and died in the month of April, following, and due notice and proof was furnished to the appellant within proper time. The appellant declined to pay the amount of the policy and the appellee brought an action at law on the policy, but suffered a *non pros* and afterwards filed her bill in equity in the Circuit Court of Baltimore City, in which it is charged that no interest was due on the 5th of May, 1874, that the clause of the policy, by which the non-payment of interest at the time specified, was to cause the policy to cease and become null and void, was improperly in said policy and does not properly express the contract between the parties, and that it is inconsistent with the meaning and true interpretation thereof and should be rejected, and the contract should be construed as it really was, and as it is set forth in the bill of complaint; that said stipulation is in the nature of a penalty, which it is the pro-

vince of a Court of equity to properly construe and relieve from, and prays that a decree may be passed for the payment to the appellee of one thousand dollars, less the amount of the said notes and credits and interest due thereon, and for general relief. To this bill the appellant filed its answer under oath, by which the material averments of the bill are denied, and a commission to take testimony was issued, under which the appellee was the only witness examined. Her answers to the third, ninth and thirteenth interrogatories, so far as they gave the statements made to her by her husband, were excepted to as hearsay, but do not appear to have been passed upon by the Circuit Court, nor do we consider them as material to the determination of this case. The decree below was in favor of the appellee, and from it this appeal was taken by the Insurance Company.

The main question presented by the record and argued by the solicitors of the respective parties is, has a Court of equity jurisdiction of such a case as this? The answer to this question depends upon the further question, whether the *time* for the payment of interest in contracts of insurance of life, is of the essence of such contracts or not? It has been urged in argument that the clause of forfeiture, contained in the policy as well as in the note given by Lewis Dietz, given at the time the policy was issued, is in the nature of a penalty against which a Court of equity ought to relieve, and that the appellant can be compensated for not receiving the interest at the time stipulated for its payment, by the allowance of interest thereon during the time of default, and several cases have been cited in support of this proposition. We have carefully examined the authorities referred to, and find that very few of them touch this point, the question in most of them being whether or not the insured was entitled to a paid up policy after a forfeiture of the original one, for an amount in proportion to the sum of the premiums paid.

The case of *St. Louis Mutual Life Ins. Co. vs. Grigsby*, 10 *Bush.*, 310, is, however, directly in point, and it was held in that case that the forfeiture was in the nature of a penalty against which a Court of equity would relieve, and the company was held liable. This case was followed by one or two others in Kentucky and other States. While entertaining great respect for the learned Court by which this decision was rendered, we cannot concur in its view of the law upon this subject. While there are some forfeitures against which a Court of equity ought to, and will relieve, it will be found that they are of such a character that the *time* of payment is not of the essence of the contract, and for failure to comply at the day full compensation can be made. But in contracts of life insurance time is of the very essence of the contract. The theory on which the amount of the premium is fixed, as is well said in the brief of the appellant's attorney, is, that assuming that a man of a given age has a prospect of living a certain number of years, as shown by experience and observation, the premium charged is such a sum as, invested annually at a certain rate of interest and compounded, will, at the expiration of that time, amount to enough to pay the policy and cover the expense of the company. To accomplish this result the premium must be punctually paid and invested, and the interest re-invested at the assumed rate. Otherwise the ability of the company to pay the policy, instead of being a matter of reasonable certainty, becomes a mere matter of chance, the business of life insurance ceases to have any scientific or accurate basis, and a policy of insurance becomes a mere wager on the life of its holder. The prompt payment of interest on premium notes is as necessary to the successful working of an insurance company, as well as to the security of the insured, as are the payment of the premium notes themselves. If one policy holder can fail to pay his interest, any number of them may do the same, and

the ruin of the company would be the inevitable result. The time for payment of interest on premium notes, therefore, is of the essence of contracts of insurance. Such contracts must be strictly complied with, and Courts of equity cannot exercise a dispensing power over them, without defeating the ends and objects of one or both of the contracting parties. All the authorities hold that the right to keep the policy alive by the payment of the stipulated premium, is a privilege secured to the insured by his contract. And in *Grigsby's Case*, before referred to, the Court say, "this privilege he may exercise or abandon at his discretion. But if he does abandon it, those beneficially interested cannot complain that the insurer refuses longer to be bound by a contract, that has lost all the elements of mutuality." Then why will not the failure to pay the *interest* on premium notes, at the day named in the policy produce the same result? In this case there was no charge upon the insured, other than the payment of the interest on the premium note on the day named in the policy, and in it was the express stipulation assented to by the insured by an acceptance of the policy, and re-affirmed in the premium note given, that the policy should become void if there was a failure to pay the interest on the premium note on the day named therein. Upon the failure to pay at the day named the contract between the parties was at an end, and it was so treated by the appellant.

In support of the views herein expressed we refer to *Patch and Wife vs. Phœnix Mutual Life Ins. Co.*, 44 *Vermont*, 488; *Anderson vs. St. Louis Mutual Life Ins. Co.*, decided by the Circuit Court of the United States for the Western District of Tennessee and reported in 5 *Bigelow's Life and Accident Ins. Reps.*, 531, 532; *Russum vs. St. Louis Mut. Life Ins. Co.*, 5 *Bigelow*, 245, 246; *Nettleton vs. St. Louis Life Ins. Co.*, 6 *Ins. Law Journal*, 428.

The decree appealed from will be reversed, and the bill of complaint dismissed.

*Decree reversed, and*
*bill dismissed.*