MARGARET T. KENNEDY, Administratrix, *v.* MUTUAL LIFE INSURANCE COMPANY.

[No. 49, January Term, 1932.]

*Decided April 8th, 1932.*

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Digges, Parke, and Sloan, JJ.

*R. Contee Rose* and *J. Morfit Mullen,* for the appellant.

*Arthur L. Jackson,* for the appellee.

Urner, J., delivered the opinion of the Court.

The inquiry in this case, appealed from a judgment on a directed verdict for the defendant life insurance company, is whether the evidence is legally sufficient to admit of an inference that the company's assistant claim agent had authority to bind it by a promise to pay a policy for $1,000 which had been barred by the statute of limitations. The policy was issued on April 27th, 1872, and the death of the insured, John J. Kennedy, occurred on February 11th, 1873. Fifty-seven years later the policy was found in a drawer of a bookcase formerly belonging to Mr. Kennedy but now in the possession of the plaintiff, who is the widow of his son, and who has brought this suit in the capacity of administratrix *de bonis non* of the deceased policyholder.

It was testified by the plaintiff that a week or two after finding the policy she called, with her daughter, at the home

office of the defendant company in Baltimore; that "they went in the entrance of the insurance building," where "an official of some kind" looked at the policy and told her to "take it up to the claim department to Mr. Parr." Her testimony then proceeded, so far as necessary to be quoted, as follows: "I went in the office and asked for Mr. Parr and Mr. Parr wasn't there, and the young lady said, 'Mr. Patten there, he will take care of you.' Q. Did she tell you who he was? A. She just said Mr. Patten—is the assistant. * * * Q. And then a gentleman came forward. Did he say he was Mr. Patten? A. Yes; he was sitting at his desk when I went in. I gave him the paper * * * just laid it down, and he took the name and number, and went back and got the card and came out and read it and said— * * * he read off the card "According to the Providentia, of which he was a member at this time, this policy was lapsed in February, 1873.' Q. In when? A. March, 1873. Q. Are you positive? A. Yes, sir. I said, 'The man died in February of 1873.' He said, 'Oh that is different.' He said 'Then you were within the four weeks grace period according to the rules of the insurance company'; he said, 'The company will be glad to pay this policy, it would be a big ad. for them, when you get the proof of death, which you know we have to have that—the proof of death, the doctor's certificate and the cause of death.' "

Mr. Patten said to her that "the next day he woud get another man and go down in the vault and get the old records out of the policy; that one man could not go down there alone; they had to take two, and he would go down the next day and get them and that she should come down there and hear what was on the records * * *." She "went down later and told them she had not had an opportunity to look up the records Mr. Patten wanted—the proofs he wanted, because she was employed and that the occasion of this second visit to the office of the Mutual Life Insurance Company of Baltimore may have been two weeks after the first visit. * * * On the second occasion she saw Mr. Patten, whom she had seen on her first visit." She told him that she had not had

"time to get the necessary proofs that he wanted, or to hunt them up; and he said, there is plenty of time, there is no hurry, just take your time and when you get them come in again. He did not at that time say anything about any other records."

About two weeks later the plaintiff again visited the insurance company's office. "This was the third time," she said, and, after being informed by Mr. Patten that the matter was "out of his hands" and had been "transferred to Mr. Parr," she had a conversation with the latter which she thus narrated: "He said that it was lapsed in March, but could have lapsed sooner and they did not get a record of it in time to make a note of it before March. I said, Well, that was very strange, I thought insurance companies were more accurate than that. Then he said how could I prove that this was the same John Kennedy, that there were hundreds of Kennedys—John Kennedys. I said, there may be now but there wasn't then. He said that their attorney said I had no claim whatever. Q. That was his answer to you? A. Yes. He said, 'I have no proof—he had no proof that it was paid up to date.' I said, 'You haven't any proof it wasn't paid up to date; you have proof it was lapsed four weeks after he died.' "

The daughter of the plaintiff, who accompanied her when she first visited the insurance company's office, corroborated the mother's testimony as to the details of the interview with Mr. Patten on that occasion.

A letter to the insurance company from the plaintiff's attorney, asking that he be supplied with forms for proof of death under the policy, was answered by the company's vice-president, who stated in his letter: "We presume it to be a policy issued by the old Providentia. It seems rather late to make a death claim after almost sixty years have elapsed since the supposed death. As this company recognizes no liability thereon, we cannot submit any forms for proof of claim."

One of the provisions of the policy was that, "if a contract be made by the assured with the Providentia Society

of which he is a member, as to weekly payment is not regularly and promptly met, in accordance with the constitution and by-laws of the Providentia, that then this policy shall be null and void." There is no evidence in the record as to the terms of the relationship between the Mutual Insurance Company of Baltimore, by which the policy was issued, and the Providentia Society. The record shows that in 1873 there was administration on the estate of the insured, to whose "legal representatives" the policy was payable.

This suit belongs to a class of actions as to which it is provided by statute that they shall be commenced within three years from the time when the cause of action accrued. Code, art. 57, sec. 1. The claim now sued on had been subject to the bar of the statute for more than half a century when the plaintiff found the policy and presented it to the insurer for payment. During the same period the policy had been entered on the records of the insurance company as "lapsed." The declarations attributed to the assistant claim agent indicate that the question as to the lapsing of the policy was to be further investigated. But he is said to have made the unqualified statement that the company would pay the policy, and it is to be determined whether he sufficiently appears to have had authority to bind the company by such an acknowledgment of existing liability. If he had such power, it must be inferred solely from the fact that he was an assistant claim agent serving at the insurer's home office; there being no proof as to the actual extent of his authority. Upon the assumption that he had the full capacity of a claim agent to deal with matters to which that official could not give his personal attention, the question would remain as to whether the claim agent's power should be presumed to be adequate for the removal of a statutory limitations bar which the company was entitled to plead.

There are numerous cases in which the powers of agents to waive policy provisions as to the time of suit have been considered. Notations of such cases are contained in 2 *Couch on Insurance,* p. 1775, sec. 554; 63 *L. R. A.* 204; 47 *L. R. A.* 709; and 48 *L. R. A.* (N. S.) 912. When the

binding effect of such a waiver, as made by a competent representative of the insurer, is recognized, it is usually upon the ground of estoppel resulting from some act or declaration of the agent, which induced the claimant to delay his suit beyond the period limited in this policy. But considerations sufficient to support the theory of waiver as affecting limitations embodied in the contract of insurance may not apply with equal force to the question of authority to suspend the bar of limitations imposed by statute. That defense arises independently of the policy agreement, which is the specific subject of the agency. As a corporation can act only through its officers and agents, a waiver of the statute may be effectively accomplished through its duly authorized representatives. But the existence of such authority is ordinarily a subject of proof rather than of presumption. Its possession by a claim agent or his assistant is not necessarily inferable merely from that designation of his position. In *Washington Savings Bank v. Butchers' etc. Bank,* 107 Mo. 133, 17 S. W. 644, and *Wells, Fargo & Co. v. Enright,* 127 Cal. 669, 60 P. 439, corporations were held bound by waivers of statutory limitations by their presidents, to whose control the corporate affairs had been committed.

It was said in *Busby v. North America Life Ins. Co.,* 40 Md. 584, and repeated in *Crook v. New York Life Ins. Co.,* 112 Md. 268, 277, 75 A. 388: "The principle seems to be well settled, that where the authority of the agent does not extend to making a new contract of insurance, he cannot waive a forfeiture and revive a contract that has expired."

This court, in *Brager v. Levy,* 122 Md. 554, 562, 90 A. 102, 105, answering the contention that "the existence of an agency and the extent of the agent's powers are questions of fact for the jury," said that such "is the general rule where the authority of the agent is not conferred upon him by a written instrument. * * * But these facts, like all other facts, must be shown by competent evidence, and the burden is on him who assumes the affirmative to produce evidence from which the existence of an agent's power or authority to do a particular act may be properly inferred."

The claim involved in this suit is not such as would customarily arise in the course of a claim agent's experience. It presented an extraordinary problem, for the solution of which the powers incident to the performance of his usual duties could not, in our judgment, be properly assumed to be adequate. There being no evidence tending to prove such authority, we concur in the ruling of the trial court to that effect.

It is suggested in the appellant's brief that the letter of the defendant's vice-president, from which we have quoted, is susceptible of being construed as a recognition of the claim and as a denial of liability only on the ground of limitations, which would, it is argued, be sufficient to raise the bar of the statute upon the principle of the decisions in *Oliver v. Gray*, 1 H. & G. 204, 217, 218, and *Knight v. Knight*, 155 Md. 243, 249, 141 A. 706. But we are unable to interpret the letter in accordance with that theory.

*Judgment affirmed, with costs.*