NORTH AMERICAN ACCIDENT INSURANCE COMPANY *v.* MAMIE S. PLUMMER
[No. 53, October Term, 1934.]

672

*Decided January 15th, 1935.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, and SLOAN, JJ.

*Robert H. Archer* and *Stewart O. Day,* with whom were *Morris Rosenberg, Paul H. Meyer,* and *Tydings, Walsh, Levy & Archer,* on the brief, for the appellant.

*Frederick Lee Cobourn,* for the appellee.

PARKE, J., delivered the opinion of the Court.

Mamie S. Plummer brought an action against the North American Accident Insurance Company on an insurance policy, issued on February 13th, 1931, by the defendant to Seibert C. Plummer, husband of the plaintiff, whereby the defendant agreed with the husband to pay to the plaintiff the sum of $1,000 if her husband's death should

occur within the coverage of the policy. The husband was killed on July 8th, 1933, as a result of an accident which happened while he was driving his automobile on a highway. The plaintiff obtained a judgment, and the appeal of the defendant is based upon the rulings of the court on the evidence and the prayers. The principal question raised is the refusal to grant an instruction to the effect that the plaintiff was not entitled to recover, on the theory that the policy had lapsed at the time of the accident through a failure to pay to the company the renewal premium.

The Philadelphia Record, a newspaper, and the North American Accident Insurance Company, an assurer, were engaged for some time in a joint effort to obtain a subscription for the newspaper published by the Philadelphia Record in combination with a taking of a contract of insurance with the insurance company. In this enterprise, the Philadelphia Record and one John T. Hall were the agents of the insurance company from February 13th, 1931, to October 1st, 1933. The newspaper company was a general supervisory agent of the insurance company for the purpose of soliciting insurance and collecting the premiums in connection with the contemporaneous securing of subscriptions to its newspaper. Hall was one of the field agents to solicit subscriptions to the newspaper, in combination with the securing of accident and life insurance from the subscribers, and to collect and remit to the newspaper company the premiums on the original and renewal policies, as well as the money received for the subscriptions to newspapers. As a result of the solicitation of Hall, the husband subscribed, in February, 1931, for the newspaper for one year, and took out the original policy of insurance on which the plaintiff based her action to recover as the beneficiary of the assured in the event of his death.

The policy insured the husband for a period of twelve months from noon of Friday, the 13th of February, 1931, subject to the limitations and conditions therein contained against death or disability resulting from bod-

ily injuries effected through external, violent, and accidental means during the term of the policy, and sustained by the assured by the wrecking or disablement of a private automobile of the exclusively pleasure type, provided that the assured was not, at the time of the accident, operating such automobile for transporting merchandise for a business purpose. In the event of the death of the assured, the sum of $1,000 was payable to his wife.

The consideration for the policy was the payment of the premium of one dollar, and the contract provided that the policy might, with the consent of the company, be renewed for the same premium and for the same period of time by the payment in advance of the premium of one dollar. It was, however, further provided that "a receipt signed by the Secretary and countersigned by a licensed agent of the Company shall be the only evidence binding upon the Company of the payment of a renewal premium." The other provisions of the contract of insurance which relate to the question at bar are that no agent had authority to change the policy or waive any of its provisions; and that if a default be made in the payment of the agreed premium, the subsequent acceptance of a premium by the company or by any of its duly authorized agents shall reinstate the policy, but only to cover loss resulting from accidental injury thereafter sustained.

There was testimony on the part of the plaintiff tending to prove that the policy was attempted to be renewed for the second year by the assured sending the premium to the newspaper company by a check, dated February 15th, 1932, and drawn to its order, in the sum of one dollar. The plaintiff testified that this check was paid after having been negotiated for the payment of the premium on the insurance for the second year, but there is no evidence either that the husband received, or the insurance company issued, a receipt signed by the secretary and countersigned by a licensed agent of the company.

There was further testimony to the effect that the agent Hall received from the husband the sum of two dollars

in February, 1933. One dollar was on account of the subscription to the Philadelphia Record, and the agent testified that he forthwith remitted this sum to the newspaper company, but forgot to pay the dollar received for the renewal premium on the insurance policy. On the day that the assured was killed, Hall called to see the widow as a matter of courtesy, and inquired if there was anything that he could do, and was informed that a report had been made to the insurance company of the death. Shortly after this Hall testified that he had received a notice from the office of the newspaper that the records showed that the policy had not been renewed in 1932, but that the plaintiff claimed to have a receipt for the payment of the premium on the policy for 1933. Following this communication, Hall then sent, on August 7th, 1933, to the newspaper company the premium which is claimed to have been paid in February, 1933. The newspaper company returned to the plaintiff, on September 7th, 1933, the dollar remitted, with the statement that the policy had expired for nonpayment of the premium due February 13th, 1932, and cannot be renewed at such a late date.

Hall's testimony is that the premium was collected by him about February 14th, 1933; but the plaintiff testified that she found a receipt among her husband's papers dated February 1st, and produced the paper, which, however, is undated. The receipt is headed by the bare name of the newspaper, and below are the words, "Received of S. G. Plummer $1.00," followed by two lines for his address, and immediately below is written, "From Feb. 15/33 to Feb. 15/34," and then, on the next line and in the lower right corner, appears the signature of "John T. Hall, Clerk." There is nothing in the form or words of this receipt to indicate whether it was given for a payment on a subscription for the newspaper or for a renewal premium on the insurance policy. The original policy ran for the period of twelve months from noon, the 13th of February, 1931, and therefore yearly renewals of the policy would likewise run from the anniversary date mentioned, so the bare term, "From Feb. 15/33 to

Feb. 15/34," does not coincide with a renewed annual term of the policy. The witness Hall, however, testified that this receipt was given for a renewal of the original policy and that, at the time the payment was made, he used the form of receipt offered in evidence, instead of the different original form, because at the time he did not have the original form of receipt.

When asked if the plaintiff had a receipt for the renewal premium, signed by the secretary of the insurance company, and countersigned by a licensed agent of the company, the plaintiff admitted that she did not have such a receipt; and the defendant's testimony was that such a receipt had never been issued to the assured.

The other testimony on the part of the plaintiff was that at the time of his death the assured was driving an automobile of the exclusively pleasure type, and that he had been killed about 8 o'clock in the morning, approximately ten minutes after he had left his home for a destination unknown to his wife. On cross-examination, the plaintiff testified that the assured was a farmer, and kept a herd of eighteen cows and had a milk route in a town called "Charlestown"; that the milk was delivered in bottles, which had white paper caps upon which the assured's name was printed, and that there were other automobiles at the house for the delivery of milk; and that the plaintiff knew that her husband served certain persons regularly with milk in the morning of every day and that she did not know who had delivered milk to the customers on her husband's route on the day of the accident. A witness on the part of the plaintiff, who went to the scene at once after the crash, examined the automobile and saw cottage cheese and milk in the automobile, and found there a number of bottles full of milk. The testimony on the part of the defendant is to the same effect, except that it amplified the evidence on this point by the proof that the milk bottles had been carried in wire containers made for the purpose of holding bottles, and that the assured had made daily deliveries of cottage cheese and milk, and what remained after his customers had been served was daily delivered to a local merchant.

On the part of the defendant it was shown that the newspaper company had kept the records of the transaction, and that the policy had expired in February, 1932, as the payments received did not cover a renewal of the policy, but were credits in part on the price of subscription for the newspaper.

Disregarding the question of whether the assured was driving his private automobile of the exclusively pleasure type while transporting merchandise for a business purpose within the exception of the policy, the fundamental inquiry presented by the record is: Was the policy operative when the husband of the plaintiff was killed? On the assumption that the policy was in force by renewal continuously to its anniversary date, February 13th, 1933, and that the premium was paid to the agent Hall, the proof is clear that the premium received was not paid by the agent to the newspaper company as the agent of the insurance company until after the death of the assured, when the liability, if any, of the insurance carrier would have arisen; and that, without remitting the amount to its principal, the newspaper company returned to the beneficiary under the policy the premium thus received before any prejudicial change had been occasioned the beneficiary by its delay of one month in making a refund of the payment. *Bower & Kaufman v. Bothwell*, 152 Md. 392, 397, 136 A. 892. So, the question ultimately is: Was the soliciting agent authorized to receive the premium; and, if so, bind, by the mere receipt, the insurance company from the time of the payment, as effectually as if the payment had been tendered and accepted by the insurance company?

In the consideration of this problem it must be borne in mind that the assured was charged with the knowledge, imparted by the policy, that no agent had authority to change the policy or to waive any of its provisions, and that no change in the policy should be valid unless approved by an executive officer of the company and such approval indorsed thereon. Similarly, knowledge was imputed to the assured of the provision in the policy that a

renewal receipt, signed by the secretary and counter-signed by a licensed agent of the company, should be the only evidence binding upon the company of the payment of a renewal premium *(a)*. While knowledge of these stipulations, as well as all others, is ascribed to the assured, and while the particular stipulations mentioned are neither illegal nor against public policy, and are binding upon the assured as notice of the extent of the agent's powers *(b)*, yet such stipulations are not conclusively binding, because the relationship between the assurer and its agents is neither created nor determined by the policy, but arises, continues, and ends independent of the terms of the policy. The relationship, therefore, is extrinsic to the policy, and, if different, may be shown by parol evidence. *Richards, Law of Insurance* (4th Ed.), secs. 146, 145; *Knickerbocker Life Ins. Co. v. Norton*, 96 U. S. 234, 24 L. Ed. 689; *Merserau v. Phoenix Mut. Life Ins. Co.*, 66 N. Y. 274; *Whited v. Germania Fire Ins. Co.*, 76 N. Y. 415; *Allen v. German-Am. Ins. Co.*, 123 N. Y. 6, 25 N. E. 309; *Conway v. Phoenix Mut. Life Ins. Co.*, 140 N. Y. 79, 35 N. E. 420; *American Fire Ins. Co. v. Brooks*, 83 Md. 22, 32, 34, 34 A. 373.

*(a)* *Bakhaus v. Caledonian Ins. Co.*, 112 Md. 676, 695, 77 A. 310; *Miller v. Home Ins. Co.*, 127 Md. 140, 147, 96 A. 267.

*(b)* *Joffe v. Niagara Fire Ins. Co.* 116 Md. 155, 164, 81 A. 281; *Miller v. Home Ins. Co.*, 127 Md. 140, 146, 147, 96 A. 267; *Rhode Island Ins. Co. v. Phelps*, 141 Md. 362, 369, 118 A. 749; *Bower & Kaufman v. Bothwell*, 152 Md. 392, 396, 136 A. 892; *Reynolds v. German-Am. Ins. Co.*, 107 Md. 110, 117, 118, 68 A. 262; *First Nat. Bank v. Md. Casualty Co.*, 142 Md. 454, 459, 460, 121 A. 379; *Frontier Mortgage Corp. v. Heft*, 146 Md. 1, 13, 125 A. 772.

The burden of proving this extrinsic fact is upon the plaintiff, who is the actor and bears the weight of the affirmative. *Supra; Kennedy v. Life Insurance Co.*, 162 Md. 340, 345, 159 A. 780. The plaintiff, however, has not shown by extrinsic testimony that the agent, in the present instance, was authorized to collect the renewal pre-

mium without the explicit evidence of his authority that would have been furnished either by his possession of receipts which had been authenticated by the signature of the secretary of the company having been placed thereon, or by the agent's subsequent delivery to the assured of a receipt bearing the signatures of the secretary and himself. To accept a renewal premium, without a present or future delivery of a receipt for the payment, so signed, was in plain defiance of the terms of the policy, and, therefore, the policy-holder could not be heard to assert that the act of the agent was in pursuance of a power which he apparently possessed; and, therefore, in accepting the amount of the premium he was not the agent of the assurer, but he became the agent of the party for its payment to the insurance company. See *American Fire Ins. Co. v. Brooks,* 83 Md. 22, 32, 34 A. 373; *Williston on Contracts,* sec. 759, pp. 1442, 1443, 1444.

The policy in plain terms makes its renewal dependent upon the consent of the company, and the payment of the premium in advance of the expiration of the term. In order to evidence this consent, which must be obtained before the expiration of the existing period of insurance, and to maintain a necessary surveillance over its agents, and to obtain a record of its obligations on outstanding enforceable policies through renewals, and to furnish the assured with proof of the continuation of the policy, this receipt is provided, and made binding evidence of the payment. It has been declared by this court that, in contracts of this nature, time is of the essence of the contract, and in order that the assured may avail himself of the benefits of the policy, and, so, of its renewal, the premiums must be paid or tendered as they become due according to the terms of the policy. *Dungan v. Mut. Benefit Ins. Co.,* 46 Md. 469, 492, 493; *Knickerbocker Life Ins. Co. v. Dietz,* 52 Md. 16, 29; *Mutual Fire Ins. Co. v. Miller Lodge,* 58 Md. 463, 473, 474; *Amos v. U. S. Casualty Co.,* 131 Md. 471, 476, 102 A. 1001.

As has been noted, the plaintiff testified that she found among the papers of her husband, after his death, a re-

ceipt dated February 1st, 1933, for the sum of one dollar, and signed by John T. Hall. The paper writing thus described was then offered, and, over the objection of the defendant, admitted in evidence. It is the receipt upon which the plaintiff relies to show the payment of the renewal premium for 1933, which, by the provisions of the policy, must be paid in advance of February 13th, 1933, in order to entitle the party to a renewal, if consented to by the company. The paper writing is of an ambiguous character, but is not dated. In other words, the testimony of the plaintiff with respect to the date of the paper is wholly without foundation and must be rejected. The agent Hall stated that he received the dollar around February 14th, but he could not tell the exact date. The receipt, however, defines the period covered by the payment to be, "From Feb. 15/33 to Feb. 15/34." Instead of the payment being made in advance of February 13th, the anniversary date of the policy, for the purpose of renewing the policy for another period of twelve months from noon of February 13th, the agent, who was merely a solicitor and collector, attempted to change the period of insurance, which was in direct conflict with the express limitation of the policy that no agent has authority to change the policy or waive any of its provisions. The attempted change, after the contract had expired by force of its stipulations, was never brought to the knowledge of the company nor of any of its officers until after the death of the assured, although it is a further condition of the policy that no change shall be valid unless approved by an executive officer of the company and such approval, which was neither sought nor obtained, to be indorsed thereon. The receipt, therefore, is neither in the form prescribed for its authenticity when the renewal premium is paid in advance, with the consent of the company, nor is it valid as a contractual change in the policy. *Richards on Insurance* (4th Ed.) secs. 154, 155, 147.

In *Crook v. New York Life Ins. Co.*, 112 Md. 268, 75 A. 388, 391, analogous provisions to those in the policy in the instant case were contained in the policy of life insurance

there under consideration. A branch office of the insurance carrier was in Baltimore, in charge of an agency director and a cashier, who had, as here, no authority to issue policies or change, alter, or waive any of their terms or provisions. The cashier was authorized to receive renewal premiums, and to deliver receipts executed and furnished to him by the home office, and countersigned by the agent. The premium was not paid, and a waiver was relied upon. After quoting, from the opinion written for this court by Judge Alvey in *Busby v. North America Life Ins. Co.*, 40 Md. 583, the statement that: "The principle seems to be well settled that, where the authority of the agent does not extend to making a new contract of insurance, he cannot waive a forfeiture and revive a contract that has expired," the opinion in *Crook v. New York Life Ins. Co., supra,* proceeds at length with the quotation, and reaches a conclusion which is thus expressed: "If, therefore, it be assumed that Mr. Knott (the cashier) did in fact attempt to waive the nonpayment, his act would not bind the defendant, unless the company knew, or could have known, what he had done, and adopted or ratified his act, or by its acts or conduct had estopped itself to insist upon the consequences of the nonpayment. *Baltimore Life Ins. Co. v. Howard,* 95 Md. 244, 52 A. 397." *Busby v. North America Life Ins. Co.,* 40 Md. 572, 577-589; *Kennedy v. Life Ins. Co.,* 162 Md. 340, 345, 159 A. 780; *Burns v. Prudential Ins. Co.,* 162 Md. 228, 235, 159 A. 606; *Rhode Island Ins. Co. v. Phelps,* 141 Md. 362, 370, 371, 118 A. 749.

In the instant case there is no evidence of knowledge or ratification of the acts of Hall by the insurance carrier, and no conduct on its part that could work an estoppel. It did not receive the premium before the death of the assured, who could not have been deceived or misled by the declaration or act of an agent in a matter known by the assured to be beyond the scope of his actual or apparent authority. *Supra.*

In the event that its contention that the policy was renewed should be denied, the plaintiff argues further that

the action of the agent in receiving, in February, 1933, the sum of one dollar as a premium, was a reinstatement of the policy for another period of twelve months by virtue of that section of the policy which provides: "3. If default be made in the payment of the agreed premium for this policy the subsequent acceptance of a premium by the Company or by any of its duly authorized agents shall re-instate the policy but only to cover loss resulting from accidental injury thereafter sustained."

The policy in this case was operative for a defined period of twelve months. It is true that the policy could be renewed for the same period of time, with the consent of the company, provided the premium be paid in advance and the prescribed receipt be obtained. The lapse of the policy through the failure to renew would, however, create a period of time during which there would be no policy or contract in force. *Webb v. Mutual Fire, Ins. Co.*, 63 Md. 213, 216. To reinstate the policy after its termination by a failure to renew, would, therefore, require the formation of a new contract, for which the consideration would be the premium paid at its inception, and the stipulations would be those of the original contract, but the term would be for twelve months beginning with the day agreed, which, in the case at bar, was the 15th day of February, 1933. *MacDonald v. Metropolitan Life Ins., Co.*, 304 Pa. 213, 155 A. 491, reported and annotated in 77 A. L. R. 353-362. See *Firemen's Ins. Co. v. Floss,* 67 Md. 403, 411, 414, 10 A. 139 (no lapse); *Standard Accident & Life Ins. Co. v. Wood,* 116 Md. 575, 594, 595, 82 A. 702 (no lapse). For the formation of this new contract, however, there must be a meeting of the minds of the contracting parties. The insurance carrier is a body corporate and so must act by its duly authorized executive or agent. The policy indicates that the assent or dissent of the corporate entity to the proposed contract is expressed and established by the subsequent acceptance or refusal of a premium by the company or by any of its duly authorized agents. The burden was on the plaintiff to establish that the agent who attempted to act

and to assent was the duly authorized agent to make the contract for the company. *Kennedy v. Life Ins. Co.*, 162 Md. 340, 345, 159 A. 780.

The agent who drew the memorandum receipt and was paid the premium was but the soliciting agent of the insurance company, who usually has no power to make a binding contract. He solicits applications for insurance and forwards them to the office of his principal, and often countersigns the policy, if issued, delivers it, and collects the premium. As there is no proof that the soliciting agent Hall had the power to make the contract of reinstatement, he was not the company's duly authorized agent within the meaning of the section of the policy invoked by the plaintiff. *Mechem on Agency* (2nd Ed.) sec. 1050 (2), secs. 1055, 1056, 1058, 1064.

In *Busby v. North America Life Ins. Co.*, 40 Md. 572, at page 584, the court said: "The principle seems to be well settled, that where the authority of the agent does not extend to making a new contract of insurance, he cannot waive a forfeiture and revive a contract that has expired." *Kennedy v. Life Ins. Co.*, 162 Md. 340, 345, 159 A. 780; *Burns v. Prudential Ins. Co.*, 162 Md. 228, 235-237, 159 A. 606; *Crook v. N. Y. Life Ins. Co.*, 112 Md. 268, 277-279, 75 A. 388; *Halsbury's Laws of England*, vol. 17, tit. Insurance, sec. 1096, p. 549; *Acey v. Fernie* (1840) 7 M. & W. 151, 151 Eng. Reprint. 717, 719.

Since the acts of the soliciting agent Hall, upon which the plaintiff's right of action depends, were not in pursuance of any express or implied power as agent of the insurance carrier, the policy was, under the circumstances of this record, not in force at the happening of the accident to the assured, and the prayer withdrawing the case from the jury should have been granted. In this view of the case, it becomes unnecessary to consider the other questions raised.

*Judgment reversed, without a new trial, with costs to the appellant.*