# UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 20-1937

JOWITE LIMITED PARTNERSHIP,

Plaintiff – Appellant,

v.

FEDERAL INSURANCE COMPANY,

Defendant – Appellee.

Appeal from the United States District Court for the District of Maryland, at Baltimore.
Deborah Lynn Boardman, Magistrate Judge.  (1:18-cv-02413-DLB)

Argued:  September 21, 2021                     Decided:  November 4, 2021

Before QUATTLEBAUM and RUSHING, Circuit Judges, and Rossie D. ALSTON, Jr.,
United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:**  Ira Lee Oring, FEDDER AND GARTEN PROFESSIONAL ASSOCIATION,
Owings Mills, Maryland, for Appellant.  Bryant Green, NILES, BARTON & WILMER,
LLP, Baltimore, Maryland, for Appellee.  **ON BRIEF:**  Jay Abarbanel, FEDDER AND
GARTEN PROFESSIONAL ASSOCIATION, Owings Mills, Maryland, for Appellant.
Craig D. Roswell, NILES, BARTON & WILMER, LLP, Baltimore, Maryland, for
Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In 2017, Appellant Jowite Limited Partnership sought coverage from Appellee Federal Insurance Company for damage to a building under an all-risk insurance policy (the "Policy"). Citing various exclusions in the Policy, including exclusions for loss or damage caused by settling and for loss or damage caused by faulty planning or design, Federal denied coverage and Jowite sued. On cross-motions for summary judgment, the district court denied Jowite's motion and granted Federal's. Jowite appealed. Finding no reversible error, we affirm the district court.

I.

Jowite owns three apartment buildings in Easton, Maryland that were originally constructed in the late 1980s. At some point in 1999, a property manager noticed that one of the buildings—Building 300—was sinking into the ground. Repairs to Building 300 were attempted but were unsuccessful.

In January 2013, a new property management company began managing the apartment buildings. When the new management company noticed that Building 300 was sinking, it hired an engineering firm to evaluate the settlement issues and a construction company to repair the building. The engineering firm attributed Building 300's settlement problems to, in part, "a concentrated load that may not have been accounted for in the original design and over time has sagged due to insufficient support in th[e] area." J.A. 1250. The construction company attempted to fix the problems which the engineering firm identified by installing several hydraulic jacks underneath the support beams in the building's interior. While installing the hydraulic jacks, the construction company noticed

2

several other structural problems in the building. Most significantly, the construction company discovered that the foundation and the footer near the back wall of the building had "failed[,] causing the building to become extremely out of level." J.A. 617.

Following the repairs, the engineering firm reinspected Building 300 and found additional structural problems. Roughly two years later, the building was inspected again, this time by a new construction company, which recommended that the building be demolished completely. Rather than undertaking additional repairs, Jowite filed an insurance claim with Federal under the Policy, seeking coverage for the damage caused to the building "due to ground settling." J.A. 1385.

After receiving Jowite's claim, Federal retained its own structural engineer to inspect Building 300. Federal's engineer observed that the damage to the building, including cracks to the building's exterior, were "consequences that may have occurred as a result of ongoing settlement over the building's approximately 30-year life." J.A. 635. Federal's engineer also observed that the building sat on soil containing organic matter, which is apparently naturally degradable and compressible, and that the building had irregular shaped footings with off-centered piers. Jowite's retained liability expert opined that "the root cause of the problem . . . [was] inadequate design and construction of [the] building foundation[]," J.A. 801, and that an "adequately designed and supported" foundation would not have settled. J.A. 894.

Federal denied Jowite's claim for coverage for the damage to Building 300, citing several exclusions in the Policy, including the defective design exclusion and the settling exclusion.

3

The Policy's defective design exclusion provides:

> This insurance does not apply to loss or damage (including the cost of correcting or making good) caused by or resulting from any faulty, inadequate or defective:
>
> - planning, zoning, development, surveying, siting;
> - design, specifications, plans, workmanship, repair, construction, renovation, remodeling, grading, compaction;
> - materials used in repair, construction, renovation or remodeling; or
> - maintenance
>
> of part or all of any property on or off the premises shown in the Declarations.
>
> This Planning, Design, Materials Or Maintenance exclusion does not apply to ensuing loss or damage caused by or resulting from a peril not otherwise excluded.

J.A. 64.

The Policy's settling exclusion provides:

> This insurance does not apply to loss or damage caused by or resulting from settling, cracking, shrinking, bulging or expansion of land, paved or concrete surfaces, foundations, pools, **buildings** or other structures.
>
> This Settling exclusion does not apply to ensuing loss or damage caused by or resulting from a **specified peril**.

J.A. 68.[1]

On cross-motions for summary judgment, the district court denied Jowite's motion and granted Federal's, concluding that both the defective design and settling exclusions barred coverage. On appeal, Jowite argues that the district court incorrectly interpreted

---

[1] Bolded terms are defined by the Policy.

4

both exclusions under Maryland law. As to the design exclusion, Jowite contends that the district court improperly interpreted the "ensuing loss" exception to the exclusion. That exception restores coverage for "ensuing loss or damage caused by or resulting from a peril not otherwise excluded." Jowite maintains that the district court erred by holding that the exception could not apply where the loss or damage could not be separated from the defectively designed property. As to the settling exclusion, Jowite argues that the district court erred by refusing to apply the "efficient proximate cause" rule to conclude that the defectively design and construction of Building 300's foundation, not the "settling," was the proximate cause of the loss.

## II.

We review de novo a district court's decision to grant summary judgment, applying the same legal standards as the district court and viewing all facts and reasonable inferences in the light most favorable to the nonmoving party. *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Facts are material when they might affect the outcome of the case, and a genuine issue exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *News & Observer Publ'g Co.*, 597 F.3d at 576 (internal quotation marks omitted). If the nonmoving party "has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof," summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "When faced with cross-motions for

5

summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks omitted).

A federal court sitting in diversity must apply the forum state's substantive law. *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 369 (4th Cir. 2013). Thus, as a court exercising diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332, the district court correctly concluded that Maryland law governs the interpretation of the Policy. J.A. 1577.

### III.

Based upon our review of the record, there appear to be no disputed material facts in this case.

Although Jowite concedes that there is no controlling Maryland authority directly applicable to either exclusion, Jowite instead argues that the district court failed to accurately predict how Maryland courts would interpret each exclusion. While we agree that there is no controlling Maryland authority interpreting either exclusion,[2] principles of Maryland insurance policy interpretation are well-settled. "[T]he interpretation of an insurance policy is governed by the same principles generally applicable to the construction of other contracts[.]" *Mitchell v. AARP Life Ins. Program, New York Life Ins. Co.*, 779

---

[2] The parties heavily rely on two Maryland district court cases in *Selective Way Ins. Co. v. Nat'l Fire Ins. Co. of Hartford*, 988 F. Supp. 2d 530 (D. Md. 2013) and *Bethany Boardwalk Group LLC v. Everest Security Ins. Co.*, No. ELH-18-3918, 2020 WL 1063060 (D. Md. Mar. 5, 2020). Both cases interpret similar insurance policy terms, but they are ultimately inapposite. For example, *Selective Way* provides only limited guidance because the relevant policy language differs from the language at issue here.

A.2d 1061, 1069 (Md. Ct. Spec. App. 2001) (citing *Philadelphia Indem. Ins. Co. v. Maryland Yacht Club, Inc.*, 742 A.2d 79, 85 (Md. 1999)). When determining coverage under an insurance policy, "'the primary principle of construction is to apply the terms of the insurance contract itself.'" *Universal Underwriters Ins. Co. v. Lowe*, 761 A.2d 997, 1005 (Md. Ct. Spec. App. 2000) (quoting *Bausch & Lomb v. Utica Mut. Ins. Co.*, 625 A.2d 1021, 1031 (Md. 1993)). Courts must consider the policy's plain language and assign the "words and phrases their ordinary and accepted meanings as defined by what a reasonably prudent lay person would understand them to mean." *Kendall v. Nationwide Ins. Co.*, 702 A.2d 767, 771 (Md. 1997).

Generally, when an insured claims a breach of an insurance policy "the insured bears the burden of proving every fact essential to his or her right to recovery, ordinarily by a preponderance of the evidence." *Gen. Ins. Co. v. Walter E. Campbell Co.*, 241 F. Supp. 3d 578, 597 (D. Md. 2017) (citing *N. Am. Acc. Ins. Co. v. Plummer*, 176 A. 466, 469 (Md. 1935)). If the insured meets its burden and the insurer relies upon an exclusion to deny coverage, the insurer bears the burden of proving that the exclusion applies. *See Finci v. Am. Cas. Co.*, 593 A.2d 1069, 1087 (Md. 1991).

Applying these straightforward rules of insurance policy interpretation, we agree with the district court that the design exclusion bars coverage for the claim. Essentially, Jowite argues that the collapse[3] of Building 300 could be both the "peril" and the "loss or

---

[3] The parties disagree whether Building 300 actually "collapsed," but the district court did assume, for the purposes of its analysis, "that a serious impairment of the building has occurred such that it is a 'collapse' under Maryland law." J.A. 1584-85.

damage" under the ensuing loss exception.  But Jowite's interpretation runs afoul of Maryland's primary principle of contract construction—to construe an insurance policy's text consistent with what an ordinary layperson would understand it to mean—to say nothing of the fact that Jowite's interpretation would also strip the design exclusion of any real meaning.  We therefore agree with the district court's conclusion that the ensuing loss exception cannot reasonably be understood to mean that the collapse of Building 300 could be both the "ensuing loss or damage" and the "peril not otherwise excluded."

While we conclude that the district court committed no reversible error in holding that the design exclusion bars coverage of Jowite's claim, we also observe, without deciding, that the result of this case would be unchanged were we to review the district court's application of the settling exclusion.

*AFFIRMED*